Order Entered.

*Patrick M. Flatley*
Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: ) | |
| ) | |
| TARA RETAIL GROUP, LLC, ) | Case No. 17-bk-57 |
| ) | |
| Debtor. ) | Chapter 11 |
| _____ ) | |
| ) | |
| U.S BANK, NATIONAL ASSOCIATION, ) | |
| as Trustee for the benefit of the Holders of ) | |
| COMM 2013-CCRE12 Mortgage Trust ) | |
| Mortgage Pass-Through Certificates, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TARA RETAIL GROUP, LLC, ) | Adversary No. 18-ap-10 |
| ) | |
| Defendant ) | |
| and Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMM 2013 CCRE12 CROSSINGS ) | |
| MALL ROAD, LLC, and ) | |
| ) | |
| WELLS FARGO COMMERICAL ) | |
| MORTGAGE SERVICING, ) | |
| ) | |
| Third- Party Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION

U.S. Bank, National Association, as Trustee for the benefit of the holders of COMM 2013-CCRE12 Commercial Mortgage Pass-Through Certificates ("U.S. Bank"), Wells Fargo Commercial Mortgage Servicing, ("Wells Fargo"), and COMM 2013 CCRE12 Crossings Mall

1

Road, LLC, ("COMM2013") (collectively, the "Movants"), seek the dismissal of the Third-Party Complaint and Second Amended Counterclaim filed against them by Tara Retail Group, LLC (the "Debtor"), in the above-captioned adversary proceeding. According to the Movants, the court should dismiss the Debtor's claims because the Debtor fails to state causes of action upon which the court can grant relief. The Debtor asserts that the court should deny the Movants' motion because it adequately states causes of action for breaches of contract, fiduciary duty, and good faith and fair dealing, as well as tortious interference with business relationships, punitive damages, an accounting, and declaratory judgment.

For the reasons stated herein, the court will grant in part and deny in part the motion to dismiss.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint against it when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). When evaluating a motion to dismiss, the court must (1) construe the complaint in a light favorable to the non-movant, (2) accept the factual allegations in the complaint as true, and (3) draw all reasonable inferences in favor of the plaintiff. 2 *Moore's Federal Practice – Civil* § 12.34 (2018). After undertaking these steps, the claim for relief must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a motion to dismiss, the court is not adjudicating whether a plaintiff will ultimately prevail on the merits of the complaint; it is only determining if the plaintiff is entitled to offer evidence to support the claims. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

## II.   BACKGROUND

The Debtor is the owner of property known as The Crossings Mall ("Shopping Center") in Elkview, West Virginia. It is a multitenant commercial property consisting of about 200,000 square feet. Public access to it is limited to a bridge over Little Sandy Creek.

On September 17, 2013, the Debtor borrowed $13,650,000 from UBS Real Estate Securities, Inc ("UBS"). Along with the Promissory Note evidencing its promise to repay the loan, the Debtor also executed a Loan Agreement governing the loan, an Assignment of Leases and Rents ("ALR"), a Cash Management Agreement, and a Deed of Trust pledging the Shopping Center as collateral to secure its repayment of the Note. UBS eventually assigned the loan to U.S.

Bank, which ultimately assigned the loan to COMM2013. COMM2013 is the current holder of the loan. Wells Fargo was the master servicer of the loan during all relevant times and continues to serve in that capacity.

Pursuant to the terms of the Loan Agreement, tenants made payments directly to Wells Fargo and such funds were segregated into various subaccounts. In that regard, the parties created a Capital Expenditure Account which received monthly deposits in the amount of $3,493.62. These Capital Expenditure funds were to be held by the lender for certain annual capital expenditures and other capital expenditures approved by the lender, the approval for which "shall not be unreasonably withheld or delayed." (Loan Agreement, Section 6.4).

In January 2016, the Debtor's property manager, Gold Coast Partners, LLC, obtained a quote for $9,200 to "replace a drop inlet culvert at the entrance of the Crossings Mall in Elkview." (Doc. No. 82-3, p. 5). Subsequently, Gold Coast submitted a written request to Wells Fargo for a disbursement of Capital Expenditure Funds to perform work on the culvert. In the request, Gold Coast related that if this matter "is not resolved immediately the only entrance to the center could collapse." (Doc. No. 82-3, p. 2). Ultimately, Well Fargo did not release the requested funds for the culvert repair. In June 2016, a torrential rain caused substantial flooding that washed away the bridge spanning the culvert and rendered the Shopping Center inaccessible for over a year.

On September 28, 2016, U.S. Bank filed a complaint against the Debtor in the United States District Court for the Southern District of West Virginia (the "District Court") alleging breach of contract for the Debtor's alleged defaults under the Loan Agreement. On November 30, 2016, the Debtor filed its answer and counterclaim. On January 24, 2017, the Debtor filed bankruptcy in the Northern District of West Virginia. Shortly thereafter, the District Court granted the Debtor's motion to transfer the Debtor's counterclaim to this court. In May 2018, this court granted the Debtor leave to amend its pleading after which time it timely filed its third-party complaint and second amended counterclaim. The Movants filed the motion to dismiss that is the subject of this memorandum opinion on September 07, 2018. This matter is now ripe for disposition. [1]

---

[1] In their pleadings, the parties briefed West Virginia law with respect to breach of contract claims despite the choice of law provision in the Loan Agreement specifying that matters with respect to the Loan Agreement and other loan documents, shall be governed by New York contract law. (Doc. No. 82-1, p. 126). In that regard, on February 21, 2019, the court ordered the parties to supplement their briefing to identify whether West Virginia, New York, or some other law

3

### III. ANALYSIS

The Movants argue that the court should dismiss the Debtor's third-party complaint and second-amended counterclaim because the Debtor fails to state a claim upon which the court can grant relief, including for: I) Breach of Contract, II) Breach of Duty of Good Faith and Fair Dealing, III) Breach of Fiduciary Duty, IV) Tortious Interference with Business Relationships, V) Punitive Damages, VI) Action for Accounting, and VII) Declaratory Judgment. Specifically, the Movants allege that the breach of contract claim should be dismissed because, among other things, the Movants were not obligated to release funds to repair the culvert bridge because the Debtor failed to perform its own obligation under the Loan Agreement to request such funds. Regarding the Debtor's cause of action for breach of duty of good faith and fair dealing, the Movants argue that no such independent cause of action exists without a breach of contract claim. Because the Debtor's claim for breach of contract fails, the Movants assert, no breach of duty of good faith and fair dealing can survive. Additionally, the Movants assert that the Debtor's claim for breach of fiduciary duty fails because, as a matter of law, a fiduciary relationship between a creditor and debtor is not generally recognized. As to Debtor's claim that the Movants tortiously interfered with its business, the Movants assert that the Debtor only alleges one of the four elements necessary to establish a prima facie case in that regard such that Count IV fails. As to Count V, the Movants assert that no independent action for punitive damages exists under West Virginia law. Additionally, the Movants argue that the Debtor is not entitled to an accounting because, among other things, W.Va. Code § 55-8-13 does not obligate the Movants to provide one. Finally, the Movants argue that a declaratory judgement finding that 1) the Debtor is not in default of its obligations under the Loan Agreement and 2) the Movants are liable for the cost of rebuilding the bridge and culvert is inappropriate because the former is duplicative of claims already before the court and the latter has no successful substantive basis in law.

The Debtor asserts that the court should deny the motion to dismiss for several reasons. As to its breach of contract claim, the Debtor contends, among other things, that the question of its performance is misplaced at this stage. Notably, the Debtor agrees that its claim for the breach of the implied duty of good faith and fair dealing can only survive if an express breach of contract claim is pled. In that regard, the Debtor maintains that its breach of contract claim is adequately

---

pertained. The parties submitted their briefing and agreed that New York law is to govern the issues related to breach of contract.

pled such that its claim for the breach of implied duty of good faith and fair dealing should survive. Also, the Debtor asserts that while a fiduciary duty is not generally recognized between a creditor and a debtor, in this case, the Movants exercised an extraordinary amount of control creating a special relationship that gave rise to a fiduciary duty. As to its claim that the Movants tortiously interfered with its business relationships, the Debtor maintains that it has sufficiently alleged the four elements necessary to establish its claim. Regarding punitive damages, the Debtor agrees that punitive damages are not a separate cause of action but asserts that its right to punitive damages flows from prior counts in its Complaint. Additionally, regarding the Debtor's action for accounting, the Debtor asserts that the Movants incorrectly imply that W.Va. Code § 55-8-13 is the only means by which the Debtor is entitled to an accounting. Finally, with respect to its request for declaratory judgment, the Debtor argues that the Movants allege that its claim is duplicative without providing an explanation of the duplication or how the Movants are prejudiced, thus its motion to dismiss should be denied.

## A. Breach of Contract

The Movant seeks dismissal of the Debtor's breach of contract claim on the basis that the Debtor fails to state a claim upon which the court can grant relief. The Movants argue that the Debtor has failed to adequately plead its claim because, among other things, the Debtor failed to follow the procedures under the Loan Agreement for requesting Capital Expenditure Funds. Specifically, the Movants allege that the Debtor was required to make the repairs before requesting disbursement of the Capital Expenditure Funds. Because the Debtors did not adequately perform under the contract, the Movants assert, no obligation arose to release funds. In that regard, Section 6.4.2 in relevant part states:

> Lender shall disburse to Borrower the Capital Expenditure Funds upon satisfaction by Borrower of each of the following conditions: . . . (iii) Lender shall have received an Officer's Certificate . . . stating that all Capital Expenditures to be funded by the requested disbursement have been completed in a good and workman like manner . . .

Notably, the Debtor acknowledges that it did not repair the bridge before seeking the funds. The court will grant the motion to dismiss as to the Debtor's breach of contract claim.

Under New York law, the elements for breach of contract are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013) (citing *Kramer v. N.Y.C. Bd. of Educ.,* 715 F. Supp. 2d 335,

5

356 (E.D.N.Y.2010)). In order to withstand a motion to dismiss on a breach of contract claim the Debtor must "at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion." *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y.1991)).

Here, the Debtor alleges the existence of a contract, specifically the Loan Agreement. Additionally, the Debtor alleges that it performed its obligations under the contract by providing the Movants with information and documents required by 6.4.2 of the Loan Agreement in support of its request for release of Capital Expenditure Funds. The Debtor asserts that the Movants breached by denying its requests and failing to release the funds to repair the culvert bridge. Lastly, the Debtor argues that because the Movants' refused to disburse Capital Expenditure Funds, repairs to the culvert bridge were never effectuated thereby precipitating its ruin in the flood, rendering the Crossings Mall inaccessible, and ultimately resulting in significant economic injury to the Debtor.

A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P. 10. "In the determination of whether there is a valid claim or defense, there are occasions when an exhibit works against the pleader who has adopted it. For example, in the case of a conflict between the exhibit and the pleading, the exhibit controls." 2 Moore's Federal Practice - Civil § 10.05 (2019). "[I]f a plaintiff 'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002)). "Accordingly, if a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization." *Goines*, 822 F.3d at 166 (citing *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 181 (4th Cir. 2000) (affirming lower court decision to grant a Rule 12(b)(6) motion regarding breach of lease claim when the lease attached to the complaint gave the lessor the right to take actions complained of by the plaintiff).

Here, the Debtor attached a copy of the Loan Agreement to its complaint. A conflict exists, however, between the allegations of the complaint and the terms of the Loan Agreement attached to the complaint. Because the Debtor relies upon the Loan Agreement to form the basis

of its claim and the Loan Agreement negates the claim, dismissal is appropriate. In its complaint, the Debtor states that it provided the Plaintiff and/or Wells Fargo with information and documents required by Section 6.4.2 of the Loan Agreement in support of its request for release of Capital Expenditure Funds. However, Section 6.4.2 of the Loan Agreement requires the Debtor to provide the Lender with a certification that the work has been completed before the Lender is obligated to release Capital Expenditure Funds. The Debtor admits that it completed no repairs before it sought Capital Expenditure Funds. Therefore, the Debtor's assertion that the Plaintiff, Wells Fargo, and COMM2013 breached the loan agreement is negated by the Loan Agreement attached to the complaint. Thus, the Loan Agreement's description of the Movants' duties prevails over the Debtor's contrary characterization. The court will therefore dismiss the Debtor's breach of contract claim.

**B. Breach of Duty of Good Faith and Fair Dealing**

The Debtor alleges that the movants breached the duty of good faith and fair dealing by failing to consider in good faith the Debtor's request for Capital Expenditure Funds or other reserves and by refusing to disperse Capital Expenditure Funds. The Movants argue that the claim should be dismissed because there is no independent cause of action for the breach of the duty of good faith and fair dealing under New York law. In that regard, the Movants assert that because the Debtor's claim for breach of contract fails, its claim for the breach of the duty of good faith and fair dealing must also fail. Notably, both parties agree that an action for the breach of duty of good faith and fair dealing can only survive if an express breach of contract claim is pled.

Under New York law the covenant of good faith and fair dealing is implied in every contract. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 773 N.E.2d 496, 500 (2002) (citing *Smith v. General Acc. Ins. Co.*, 91 N.Y.2d 648, 652–653 (1998)). "To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the following: '(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages.'" *Schonfeld v. Wells Fargo Bank, N.A. for Aegis Asset Backed Sec. Tr. Mortg. Pass-Through Certificates, Series 2004-3*, No. 1:15-CV-01425, 2017 WL 4326057, at *5 (N.D.N.Y. Sept. 27, 2017) (quoting *Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, *6 (S.D.N.Y. Mar. 24, 2009)). However, a claim for breach of duty of good faith and fair dealing "cannot be maintained where it is premised on the same conduct that underlies the breach of contract cause of

action, and is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'" *MBIA Ins. Corp. v. Merrill Lynch*, 81 A.D.3d 419, 420 (1st Dept. 2011) (quoting *The Hawthorne Group, LLC v. RRE Ventures,* 7 A.D.3d 320, 323, (1st Dept. 2004)). Although a claim for breach of duty good faith and fair dealing cannot be maintained where the claim only substitutes for a nonviable breach of contract claim, the claim "can occasionally stand on its own" where a plaintiff alleges that the defendant "acted in bad faith as part of [a] scheme to deny them of the benefit of their bargain." *Gross v. Empire Healthcare Assurance, Inc.*, 847 N.Y.S.2d 896, 2007 WL 2066390, at *3-4 (N.Y. Sup. Ct. 2007) (citing *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 2007 WL 1774986 (1st Dept. June 21, 2007).

Here, the Debtor asserts that the Movants had a duty to act in good faith in considering its request for funds, that the Movants' "actions and inactions" constituted a breach of that duty, and that it incurred damages as a direct and proximate result of the Movants breaching the Loan Agreement. (Doc. 82, p. 6). Although the Debtor has stated the elements necessary to plead a cause of action for the implied covenant of good faith and fair dealing, this claim is premised on the same conduct that underlies the breach of contract claim, specifically that the Movants refused to release Capital Expenditure Funds to repair the culvert bridge. Moreover, the damages in both causes of action are identical. Because the conduct and resulting injury in both counts are identical, and the Debtor does not allege that the Movants' refusal to release funds was in furtherance of a bad faith scheme to deny it of the benefit of its bargain, it cannot maintain its cause of action for the breach of duty of good faith and fair dealing. Therefore, the court will grant the motion to dismiss as to Count II.

## C. Breach of Fiduciary Duty

The Movants argue that the court should dismiss the Debtor's cause of action alleging breach of fiduciary duty because the Movants owed no fiduciary duty as a matter of law. Specifically, the Movants assert that a fiduciary relationship between a creditor and debtor is not generally recognized in West Virginia.[2] The Debtor contends that the Movants assumed a fiduciary duty to maintain reasonably functional commercial premises for the Debtor's business. This duty arose, the Debtor alleges, by way of a special relationship created through the structure

---

[2] The remaining claims are analyzed under West Virginia law. Only the claims related to the contract actions required analysis under New York law by virtue of the choice of law provision in the Loan Agreement.

8

of the financing transaction. Specifically, the Debtor asserts that the Movants' intervention, control, and oversight of, among other things, Capital Expenditure Funds, evidences a special relationship creating a fiduciary duty.

The elements necessary to prove a breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damages. *Nat'l Credit Union Admin. Bd. v. Bailey*, No. CIV.A. 1:09-0724, 2015 WL 4276283, at *6 (S.D.W. Va. July 14, 2015) (citing *Wittenberg v. First Indep. Mortg. Co.,* Civil Action No. 3:10–CV–58, 2011 WL 1357483, *17 (N.D.W. Va. Apr.11, 2011)). In West Virginia, a lender owes a legal duty to a borrower only if there exists a special relationship between the two. *In re Tillette*, 557 B.R. 902, 909 (Bankr. S.D.W. Va. 2016) (citing *White v. AAMG Constr. Lending Ctr.,* 226 W.Va. 339, 346, 700 S.E.2d 791, 798 (2010)). "[A] special relationship may exist when a lender performs 'services not normally provided by a lender to a borrower.'" *In re Tillette*, 557 B.R. at 909 (citing *Tinsley v. OneWest Bank, FSB*, 4 F.Supp.3d 805, 839 (S.D.W. Va. 2014)).

Here, the Debtor pleaded the elements necessary to survive a motion to dismiss on its breach of fiduciary duty claim. First, the Debtor alleges that a fiduciary relationship arose by virtue of a special relationship between it and the Movants. Specifically, the Debtor maintains that the Movants exercised extraordinary oversight, implying that the Movants provided services not normally provided by a lender to a borrower through the structure of the financing transaction. Additionally, in light of the alleged fiduciary relationship, the Debtor asserts that the Movants had a duty to "maintain reasonably functional commercial premises for the transaction of [the Debtor's] business." (Doc. No 82 p. 7). The Debtor asserts that the Movants breached that duty by failing and refusing to maintain the premises. Finally, the Debtor claims that it suffered economic loss and other damages as a result of the Movants' breach. Therefore, the court will deny the motion to dismiss as to Count III.

### D. Tortious Interference with Business Relationships

The Movants argue that Count IV of the Debtor's complaint should be dismissed because among other things, the Debtor only pleads one of the necessary four elements to establish a claim for tortuous interference with business relationships. The Debtor contends that it pleaded all the necessary elements for tortious interference such that the court should deny the Movants' motion to dismiss as to the claim.

"To establish prima facie proof of tortious interference, a plaintiff must show: (1) existence

9

of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." *Hatfield v. Health Mgmt. Assocs. of W. Virginia*, 223 W. Va. 259, 267 (2008) (citing *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983)). It is not enough to plead an intentional act that leads to interference, rather, the plaintiff must plead that the defendant had the intention of interfering with the business relationship. *See In re 201 N. George Street., LLC*, 551 B.R. 786, 792 (Bankr. N.D.W. Va. 2016).

Here it is undisputed that the Debtor had a business relationship with its tenants. In satisfaction of the second element, the Debtor argues that the Movants, acting intentionally, failed to maintain access to the Crossings Mall. In that regard, the Debtor's argument seems to be that the Movants' intentional refusal to release funds to repair the culvert bridge led to an interference in its relationship with it tenants. The Debtor does not however allege, as is necessary here, that the Movants intentionally interfered with the Debtor's relationship with its tenants. In other words, the Debtor does not allege that the Movants refused to release funds to repair the culvert bridge with the intent of interfering with the relationship between the Debtor and its tenants. Therefore, the court will grant the motion to dismiss as to this count.

**E. Punitive Damages**

Movants argue that the Debtor's claim for punitive damages should be dismissed because no separate cause of action for punitive damages exists under West Virginia law. In the Debtor's response to the motion to dismiss, the Debtor concedes that punitive damages are not a separate cause of action in West Virginia. Therefore, the motion to dismiss as to this count is granted. However, the court acknowledges that the Debtor's request for relief includes a prayer that the court consider an award of punitive damages in any prospective damage calculation.

**F. Action for Accounting**

The Movants argue that Count VI of the complaint should be dismissed because 1) the Debtors fail to identify a contractual obligation or special relationship requiring the Movants to provide an accounting, 2) adequate remedies at law exist such that an accounting is improper, and 3) W.V. Code § 55-8-13 does not provide that the Debtor is entitled to an accounting. The Debtor argues that the motion to dismiss should be denied as W.V. Code § 55-8-13 does not provide the only means by which a claim for accounting may be brought.

10

Debtor provides no West Virginia authority explaining the elements for an action for accounting claim, nor did the Court's own research reveal the specific elements for such an action. The court thus assumes that an action on account has the same elements in West Virginia as it does in other states following the common law. Although the elements for an action for accounting are not uniform throughout the states, there are common elements to each. For instance, in New York in an action for accounting a Plaintiff must allege "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (*quoting Pressman v. Estate of Steinvorth*, 860 F.Supp. 171, 179 (S.D.N.Y. 1994) (internal quotations omitted)). In Florida, "[a] party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate the inadequacy of the legal remedy." *Staup v. Wachovia Bank, N.A.*, No. 08-60359-CIV-COHN, 2008 WL 2598005, at *4 (S.D. Fla. June 27, 2008) (citing *Kee v. National Reserve Life Ins. Co.,* 918 F.2d 1538, 1540 (11th Cir. 1990)). Similarly, in Mississippi, "[f]actors considered in determining whether an accounting is warranted include '(1) the need of discovery, (2) the complicated character of the accounts, and (3) the existence of a fiduciary or trust relationship.'" *Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F. Supp. 2d 826, 836 (S.D. Miss. 2011) (quoting *Re/Max Real Estate Partners, Inc. v. Lindsley,* 840 So.2d 709, 712 (Miss.2003)). Although the elements are not completely uniform throughout, at bottom it seems that a plaintiff must allege 1) the existence of a fiduciary or trust relationship, 2) the inadequacy of an adequate legal remedy, 3) either the complicated nature of the accounts or that money entrusted to the defendant imposed upon the defendant a burden of accounting, and 4) in some cases a demand for an accounting and a refusal.

Here the Debtor has alleged that there is a fiduciary duty created by a special relationship. Additionally, the Debtor explicitly states that there is no adequate remedy at law. As to the third element, the Debtor stated in its response that the Movant controlled all the money generated by the Shopping Center and that it is hard to imagine that the Movants take the position that they owe no obligation to account for how those funds have been allocated (Doc No. 89 p. 10). This statement implies a burden on the Movants to provide an accounting of money with which they were entrusted. Finally, the Debtors maintain that the Movants have "failed and refused to disclose

11

their calculations methodologies, and other bases for a) withholding funds . . . b) demanding turnovers of rent payments . . . c) demanding that [Debtor] pay excessive expenses, and other loan related fees." (Doc. No. 82 p 9). Therefore, the Debtor has adequately stated a plausible claim to survive a motion to dismiss.

As to the Movants' argument that the Debtor does not identify a special relationship, as stated herein, the Debtor did allege a fiduciary relationship arising from a special relationship. Regarding the Movants' argument that an adequate remedy at law exists, the court finds the argument misplaced at this stage of the proceeding. It is enough that the Debtor provides a short plain statement alleging the elements of the cause of action. Finally, as to the Movants' argument that because the relationship between the Debtor and Movants is not one specified in W.V. Code § 55-8-13 the Debtor is not entitled to an accounting, the court in unconvinced that the statutory provision outlines the only relationships in which a party would be entitled to an accounting. In that regard § 55-8-13 states:

> An action of account may be maintained against the personal representative of any guardian or receiver; and also by one joint tenant, tenant in common, or coparcener or his personal representative against the other, or against the personal representative of the other, for receiving more than his just share or proportion.

Nothing in the provision indicates that the relationships cited therein are the only relationships in which a party may be entitled to an accounting. An action on account has historically been brought in both law and equity although those procedural distinctions have been abolished. 1A Michie's Jurisprudence, Accounts and Accounting §10. Thus, the court will deny the motion to dismiss as to Count VI.

**G. Declaratory Judgement**

The Movants argue that the court should dismiss the Debtor's request for a declaratory judgement. In that regard, the Debtor seeks judgments declaring that the Debtor is not in default of its loan obligations and that the Movants are liable to the Debtor for the cost of rebuilding the bridge and culvert due to their bad faith denial of the Debtor's request for Capital Expenditure Funds. As to the judgement regarding the Debtors default on its loan obligation, the Movants assert that the court should dismiss the claim because it is duplicative of claims already before this court. With respect to the Movants' liability for repairing the bridge and culvert, the Movants seek dismissal of that claim on the basis that the Debtor is not entitled to a judgment as a matter of law.

Federal courts have discretion in deciding whether to exercise jurisdiction over declaratory

judgment actions. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). However, the court must have "good reason" to decline to adjudicate a declaratory judgment action. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594 (4th Cir. 2004). "The Fourth Circuit has explained that a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

"Declaratory judgment actions are generally inappropriate in disputes involving only past conduct." *Elior, Inc. v. CAG Food Servs., LLC*, No. 3:19CV45, 2019 WL 3338174, at *2 (W.D.N.C. July 25, 2019) (citing *Davison v. Plowman*, 247 F. Supp. 3d 767, 782 (E.D. Va. 2017), aff'd, 715 F. App'x 298 (4th Cir. 2018)). In that regard, declaratory judgments are "designed to apply prospectively to prevent or mandate reasonably certain, future conduct." *Trull v. Smolka*, No. CIV A 3:08CV460-HEH, 2008 WL 4279599, at *8 (E.D. Va. Sept. 18, 2008), aff'd, 411 F. App'x 651 (4th Cir. 2011)) (citing *Am. Nat'l Bank & Trust Co. v. Kushner,* 162 Va. 378, 386, 174 S.E. 777, 780 (1934)). "Thus a declaratory judgment is unavailable in situations where . . . 'claims and rights asserted have fully matured, and the alleged wrongs have already been suffered.'" *Trull v. Smolka*, at *8 (quoting *Bd. of Supervisors v. Hylton Enters.,* 216 Va. 582, 585, 221 S.E.2d 534, 537 (1976)). Moreover, "courts have repeatedly recognized that [a] declaratory judgment serves no useful purpose when it seeks only to adjudicate an already-existing breach of contract claim." *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12-CV-00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (quotations and citations omitted).

Here, the court agrees with the Movants that the declaratory judgement related to the Debtor's default is duplicative of claims already before this court and is better left for adjudication in that context. As to the Debtor's request for a declaratory judgment regarding the Movants' liability for the cost of repairing the culvert bridge, this claim involves past conduct and is thus inappropriate for a declaratory judgement. Therefore, the court will grant the motion to dismiss as to Count VII.

## IV.   CONCLUSION

Based upon the foregoing the court will GRANT in part, and DENY, in part the motion to dismiss.