SIGNED: December 27th, 2021
THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Paul M. Black
**UNITED STATES BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| **IN RE**: | ) | **CHAPTER 11** |
| | ) | |
| **TARA RETAIL GROUP, LLC** | ) | **Case No. 1:17-bk-00057** |
|    Debtor. | ) | |
| | ) | |
| **U.S. BANK, NATIONAL ASSOCIATION,** | ) | |
| **as Trustee for the Benefit of the Holders** | ) | |
| **of COMM 2013-CCRE 12 Mortgage Trust** | ) | |
| **Commercial Mortgage Pass-Through Certificates,** | ) | **Adversary Proceeding** |
|    Plaintiff, | ) | **No. 1:18-ap-00010** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TARA RETAIL GROUP, LLC,** | ) | |
|    Defendant, Cross-Plaintiff | ) | |
|    and Third-Party Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMM 2013 CCRE12 CROSSINGS MALL ROAD,** | ) | |
| **LLC AND WELLS FARGO BANK, N.A.,** | ) | |
|    Third-Party Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is the Rule 54 Motion for Attorneys' Fees and Expenses Pursuant to the

Loan Agreement (the "Rule 54 Motion") filed by U.S. Bank, National Association, as Trustee for

the Benefit of the Holders of COMM 2013-CCRE 12 Mortgage Trust Commercial Mortgage

Pass-Through Certificates ("U.S. Bank"), COMM 2013 CCRE12 Crossings Mall Road, LLC

("Comm 2013"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, the "Third-Party

Defendants") against Tara Retail Group, LLC (the "Debtor").[1]  AP ECF 303.[2]  The Debtor objects to the Rule 54 Motion.  For the reasons stated below, the Court will overrule the Debtor's objections and grant the Rule 54 Motion, with certain modifications.  Comm 2013 is awarded $525,339.02 in attorneys' fees and expenses.

## Factual Background

This demand for attorneys' fees arises out of a contractual dispute litigated in an Adversary Proceeding.  The Debtor owns the Crossings Mall (the "Mall") in Elkview, West Virginia, a commercial location with only a single point for public ingress and egress, a culvert bridge.  AP ECF 281, at 3.  This litigation arose out of the destruction of that bridge due to a historic flood.

The relationship between the Debtor and the Third-Party Defendants began September 17, 2013 when UBS Real Estate Securities ("UBS Real Estate") executed a Loan Agreement in which UBS Real Estate lent the Debtor $13,650,000.00.  AP ECF 1-1, Exhibit B.  The Debtor and UBS Real Estate also executed a Promissory Note, Deed of Trust and Security Agreement, and Assignment of Leases and Rents on the same date.  ECF Claim 2-1, Exhibits A–C.[3]  UBS Real Estate assigned the loan to U.S. Bank on December 10, 2013, ECF Claim 2-1, Exhibit D, and U.S. Bank further assigned the loan to Comm 2013 on January 13, 2017.  ECF Claim 2-1, Exhibit E.  Comm 2013 is the current holder of the loan.  Wells Fargo acted as the master servicer for the loan at all relevant times.  AP ECF 117, at 3.

---

[1] United States Bankruptcy Judge Paul M. Black, Western District of Virginia, sitting by designation.
[2] The Rule 54 Motion was also filed in the main case at docket entry number 1473.  Citations to "AP ECF" refer to this Adversary Proceeding, *In re Tara Retail Grp., LLC*, No. 1:18-ap-00010 (Bankr. N.D. W. Va.).
[3] Citations to "ECF" refer to the Debtor's bankruptcy case, *In re Tara Retail Grp., LLC*, No. 1:17-bk-00057 (Bankr. N.D. W. Va.).

This litigation centered on an unfulfilled disbursement request.  In January 2016, the Debtor's property manager emailed Wells Fargo to request $24,000.00 in funds from a Capital Expenditure Account established by the Loan Agreement in order to repair damage to the culvert bridge.  *See* AP ECF 72-3; *see also* AP ECF 1-1, Exhibit B, at 94 (establishing the Capital Expenditure Account).  The Loan Agreement required the Debtor to comply with several conditions prior to disbursement.  AP ECF 1-1, Exhibit B, at 94–96.  The Debtor did not satisfy these conditions and Wells Fargo did not disburse the funds.  AP ECF 281, at 4.  The bridge was not repaired.

In June 2016, West Virginia suffered a catastrophic "one-in-a-thousand year" flood.  AP ECF 281.  This flood had a devastating impact on Kanawha County and the Mall.  The flood also destroyed the culvert bridge providing the only public access to the Mall.  *Id.*  Subsequently, the Debtor failed to make its contractually-obligated loan payments.  *Id.*

On September 28, 2016, U.S. Bank filed a complaint against the Debtor in the United States District Court for the Southern District of West Virginia alleging breach of contract under the Loan Agreement.  AP ECF 1.  The Debtor responded with its defenses, answers, and counterclaim, but U.S. Bank filed a foreclosure notice on the Mall.  Subsequently, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code on January 24, 2017.  ECF 1.  On the Debtor's motion, the district court referred the Debtor's counterclaim to the Bankruptcy Court for the Northern District of West Virginia.  AP ECF 55, 66.  The Debtor then filed its Third-Party Complaint and Second Amended Counterclaim asserting the following claims against U.S. Bank, Wells Fargo, and Comm 2013: (I) breach of contract; (II) breach of duty of good faith and fair dealing; (III) breach of fiduciary duty; (IV) tortious interference with business relationships; (V) punitive damages; (VI) action for accounting; and (VII) declaratory judgment.  AP ECF 72.

3

By Memorandum Opinion and Order of this Court, the Court dismissed Counts I–II, IV–V, and VII on the Third-Party Defendants' Motion to Dismiss.  AP ECF 117.  After extensive discovery, the Third-Party Defendants moved the Court to grant summary judgment in their favor on the two remaining claims.  AP ECF 219–20.  The Court, by Memorandum Opinion and Order, granted summary judgment on both claims for the Third-Party Defendants on August 10, 2021.  AP ECF 281.

After prevailing on summary judgment, the Third-Party Defendants filed a Rule 54 Motion seeking an award of attorneys' fees and expenses from the Debtor.[4]  AP ECF 303.  The Debtor filed a response to which the Third-Party Defendants filed a final reply in support of the Motion.  AP ECF 314, 322.

The matter is now fully briefed and ripe for disposition.  For the reasons set forth below and with certain modifications, the Rule 54 Motion will be granted.

### Jurisdiction

This Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by the Amended Standing Order of Reference entered by the United States District Court for the Northern District of West Virginia on April 2, 2013.  This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B).

### Discussion

I.    Basis for Awarding Attorneys' Fees

As an initial matter, the American Rule requires that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Baker Botts L.L.P.*

---

[4] Federal Rule of Civil Procedure 54, with certain modifications, is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7054.

*v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)).  West Virginia follows the American Rule and permits an award of attorneys' fees when "the document governing the parties' relationship contains a clause allowing for recovery of attorney's fees."  *Amaker v. Hammond's Mill Homeowners Ass'n, Inc.*, No. 15-0203, 2015 WL 6954981, at *9 (W. Va. Nov. 6, 2015) (citing *Moore v. Johnson Service Co.*, 219 S.E.2d 315 (W. Va. 1975)).  The Third-Party Defendants rely upon the terms of the Loan Agreement to seek an award of attorneys' fees.  Under the terms of Section 11.13 of the Loan Agreement, the Debtor must pay or reimburse:

> all reasonable costs and expenses (including reasonable attorneys' fees and expenses) incurred by Lender in connection with . . . (v) enforcing or preserving any rights in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation or otherwise, in each case against, under or affecting [Debtor], this Agreement, any other Loan Document, the Property, or any other security given for the Loan . . . .

AP ECF 1-1, Exhibit B, at 122.  Furthermore, the Loan Agreement defines "Loan Documents" to include the "Agreement, the Note, the Security Instrument, the Assignment of Leases . . . and all other documents, agreements, certificates and instruments now or hereafter executed and/or delivered in connection with the Loan."  AP ECF 1-1, Exhibit B, at 31.  The Debtor's Third-Party Complaint and Second Amended Counterclaim alleged seven claims against the Third-Party Defendants.  AP ECF 72.  The claims asserted against the Third-Party Defendants trigger application of Section 11.13.  The Court, therefore, finds Section 11.13 of the Loan Agreement to be applicable and enforceable in the instant litigation, and thus a proper basis for assessing an award of attorneys' fees against the Debtor.

The Debtor objects to the award of attorneys' fees in favor of the Third-Party Defendants on two grounds.  The Court will discuss each in turn.

First, the Debtor asserts that the Third-Party Defendants' claims are pre-petition claims requiring each party to file a proof of claim and that Wells Fargo has not filed a proof of claim so it cannot recover its fees.  The Debtor argues that because it filed its initial counterclaim on November 30, 2016 before filing its Chapter 11 petition on January 24, 2017, any claims for attorneys' fees are pre-petition claims.  Section 101 of the Bankruptcy Code defines claims while Section 502 governs the allowance of claims in bankruptcy.  Under Section 101(5)(A), a "claim" is defined to include contingent rights to payment.  11 U.S.C. § 101(5)(A).  Under Section 502, claims filed in accordance with Section 501 are generally deemed allowed unless they fall within one of the nine listed exceptions.  *Id.* § 502(a)–(b).  The final listed exception disallows claims tardily filed unless tardily filed under Section 726(a)(1)–(3) with additional provisions for government claims.  *Id.* § 502(b)(9).  In the Fourth Circuit, a creditor may recover post-petition attorneys' fees under a pre-petition contract "so long as two conditions are met: First, [the creditor] must have had a 'claim' for those fees as of the petition date; and second, that claim must not fall within one or more of the nine enumerated exceptions [of Section 502(b)]." *SummitBridge Nat'l Invs. III, LLC v. Faison*, 915 F.3d 288, 292 (4th Cir. 2019).  Finally, although Section 501 *permits* a creditor to file a proof of claim, Bankruptcy Rule 3002, with limited exceptions, *requires* a creditor to file a proof of claim for the claim to be allowed.  *See* BANKR. R. 3002(a).

While the Debtor only argues that Wells Fargo cannot assert a claim for attorneys' fees and expenses for its failure to file a claim, the Court finds that neither Wells Fargo nor U.S. Bank may recover their attorneys' fees in this Court.  Both U.S. Bank and Comm 2013 have a contingent right to payment found in the Loan Agreement's indemnification provision.  *See* AP

ECF 1-1, Exhibit B, at 122.[5]  Under the Loan Agreement, the Debtor must pay or reimburse the "Lender" for its reasonable attorneys' fees and expenses.  *Id.*  The Loan Agreement defines "Lender" to mean "UBS Real Estate Securities Inc., . . . together with its successors and assigns . . . ."  AP ECF 1-1, Exhibit B, at 18.  As the Debtor and UBS Real Estate executed the Promissory Note, Deed of Trust and Security Agreement, and Assignment of Leases and Rents on September 17, 2013 and UBS Real Estate assigned these instruments to U.S. Bank, both UBS Real Estate and U.S. Bank are considered "Lenders."  *See* ECF Claim 2-1, Exhibits A–D. Additionally, as U.S. Bank assigned the instruments to Comm 2013 on January 13, 2017, Comm 2013 is also a "Lender."  *See* ECF Claim 2-1, Exhibit E.  As a result, both U.S. Bank and Comm 2013 have contingent rights to payment under the Loan Agreement and these rights therefore qualify as Section 101(5)(A) "claims."  Next, although Section 502(b)(9) excepts from allowance tardily filed claims, only Comm 2013 filed a claim against the estate.  Failing to file a claim is separate and distinct from filing a late claim against the estate and the proper analysis therefore takes place under Rule 3002, not Section 502(b).  Although both U.S. Bank and Comm 2013 had "claims" for attorneys' fees as of the petition date and those claims are not excepted under Section 502(b)(1)–(9), therefore satisfying the requirements of *SummitBridge*, the failure to file a proof of claim is fatal to U.S. Bank under Rule 3002.  As neither U.S. Bank nor Wells Fargo filed a proof of claim in the Debtor's bankruptcy case, only Comm 2013 has a recognized claim for attorneys' fees.[6]

Second, the Debtor asserts that Wells Fargo is not a "Lender" under the terms of the Loan Agreement and therefore has no contractual claim for attorneys' fees and expenses.  As

---

[5] Whether Wells Fargo also has a Section 101 "claim" is discussed further below.
[6] The Court also notes that Comm 2013 expressly reserved all rights with respect to its claim, including post-petition fees, under *SummitBridge* in its Amended Proof of Claim.  ECF Claim 2-3.

discussed above, the term "Lender" in the Loan Agreement only includes UBS Real Estate, U.S. Bank, and Comm 2013. As Wells Fargo acted as the servicer for the loan, *see* AP ECF 117, at 3, it does not qualify as a "Lender" under the Loan Agreement. The indemnification provision of the Loan Agreement, therefore, cannot apply to Wells Fargo. In response to the Debtor's objection, the Third-Party Defendants argue that a Pooling and Service Agreement ("PSA") between U.S. Bank, Comm 2013, and Wells Fargo requires U.S. Bank and Comm 2013 to indemnify Wells Fargo for any fees or expenses incurred in the defense of this Adversary Proceeding regardless of whether or not Wells Fargo is a "Lender." AP ECF 322, at 9. The Third-Party Defendants, however, did not make the PSA part of the record. The Court will thus not consider the terms of the PSA.

As the Court will not consider the PSA and neither Wells Fargo nor U.S. Bank filed a proof of claim in the Debtor's bankruptcy case, the Court will not directly award any attorneys' fees to Wells Fargo or U.S. Bank at this time. Whether or not the PSA is a valid contract outside of the bankruptcy process, however, is a different matter. This Court's jurisdiction extends to the Debtor's bankruptcy case and this Adversary Proceeding, but the PSA may be a valid contract enacted outside of the Court's purview.

Finally, the Debtor more generally objects to the Third-Party Defendants' Rule 54 Motion because the time entries submitted into the record fail to distinguish the work completed for each individual party. The Court has reviewed the time entries submitted in the Declarations of Paul E. Chronis and Christopher Schueller and agrees that the work conducted by counsel is indistinguishable as to the individual client but rather represents work for the Third-Party Defendants as a whole. The Court has discretion to reduce or disallow vague claims, *see Driftwood Manor Owners Ass'n v. Borgus (In re Borgus)*, 544 B.R. 315, 325 (Bankr. E.D.N.C.

8

2016) ("[T]he court has broad discretion in awarding fees . . . ."), but finds that allocation of the award between the Third-Party Defendants is unnecessary in this case.[7]  The Court, therefore, will direct all awarded attorneys' fees to Comm 2013 as the sole party to file a proof of claim and satisfy the requirements of *SummitBridge*.  As stated previously, if Wells Fargo and U.S. Bank believe they deserve reimbursement from Comm 2013 according to the PSA, they will have to seek enforcement of the PSA in another forum.

II.      Standard for Attorneys' Fee Awards

Courts in the Fourth Circuit employ a three-step process to calculate an award of reasonable attorneys' fees.  *McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013).  "First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'"  *Id.* at 88 (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)).  To determine the reasonable number of hours and hourly rate, courts apply the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The *Johnson* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*In re Emerald Grande, LLC*, No. 1:20-ap-00028, 2021 WL 4692591, at *2 (Bankr. N.D. W. Va. July 28, 2021) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  "Next,

---

[7] The Debtor brought forth no specific arguments or evidence that work was conducted for only a single Third-Party Defendant.

the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'  Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'"  *McAfee*, 738 F.3d at 88 (citing *Robinson*, 560 F.3d at 244).  "[W]here full relief is obtained, the [moving] attorney should receive 'a fully compensatory fee,' and in cases of exceptional success, even an enhancement."  *In re Emerald Grande*, 2021 WL 4692591, at *2 (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174–75 (4th Cir. 1994)).  Courts have great discretion in calculating the value of a reasonable fee award.  *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

### A.    Lodestar Calculation

The Court's review begins with the lodestar analysis.  Here, the Third-Party Defendants' total fee request is $549,988.23 with no reduction from the lodestar figure for unsuccessful claims.  AP ECF 303, at 7, 13.  The Court will review the lodestar figure to determine whether an adjustment is warranted.  The Third-Party Defendants submitted billing statements for both employed law firms, and the Court compiled those statements to reveal the hourly compensation for attorneys and paraprofessionals of Duane Morris LLP and Buchanan Ingersoll & Rooney, PC, respectively, as shown on Tables 1A and 1B below.  The Court also notes that in its calculation of the attorneys' and paraprofessionals' fees, the total fees sought add up to $549,991.98.[8]  *See* AP ECF 303-1 (time entries for Duane Morris), 303-3 (time entries for Buchanan Ingersoll & Rooney).  The Court will work off the lesser amount as that is what the Third-Party Defendants have requested.

---

[8]  The Court is unable to reconcile the $3.75 difference in the total fees sought by counsel.

**Table 1A**

| Duane Morris LLP | | |
|---|---|---|
| **Timekeeper** | **Hours Worked / Hourly Rate** | **Lodestar** |
| Paul E. Chronis (Partner) | 2016: 0.4 hours at $700<br>2017: 2.9 hours at $725<br>2018: 32.6 hours at $725<br>2019: 0.8 hours at $745<br>2020: 74.3 hours at $745<br>2021: 104 hours at $775 | Total: $162,567.00 |
| Meagen E. Leary (Partner) | 2016: 21.95 hours at $590<br>2017: 10.15 hours at $625<br>2018: 16.65 hours at $675<br>2019: 0.7 hours at $690<br>2020: 12 hours at $695<br>2021: 6.4 hours at $700 | Total: $43,836.00 |
| David R. Augustin (Partner) | 2016: 2.7 hours at $705 | Total: $1,903.50 |
| Marcus O. Colabianchi (Partner) | 2017: 4.15 hours at $600<br>2018: 1.4 hours at $610 | Total: $3,344.00 |
| Elinor H. Murarova (Partner effective 2021; previously Senior Associate) | 2016: 2.3 hours at $395<br>2017: 5.9 hours at $435<br>2018: 18.5 hours at $475<br>2019: 6.4 hours at $550<br>2020: 125.25 hours at $550<br>2021: 96.4 hours at $575 | Total: $140,100.00 |
| Allison M. Midei (Senior Associate) | 2020: 40.4 hours at $505<br>2021: 206.2 hours at $500 | Total: $123,502.00 |
| Minhee Lee (Junior Associate) | 2020: 15.7 hours at $375<br>2021: 18.5 hours at $410 | Total: $13,472.50 |
| Lauren M. Case (Associate) | 2016: 13.5 hours at $340<br>2020: 8.2 hours at $460 | Total: $8,362.00 |
| Drew S. McGehrin (Associate) | 2020: 25.1 hours at $445 | Total: $11,169.50 |
| **Attorney Sub-Total** | | Sub-Total: $508,256.50 |
| Michael D. Sidlow (Paralegal) | 2017: 5.4 hours at $375<br>2018: 13.5 hours at $395<br>2019: 5.8 hours at $415<br>2020: 3.3 hours at $440; 13.8 hours at $375; separately billed total of $2,596.00 for 6.92 hours[9]<br>2021: 12.8 hours at $375 | Total: $23,787.50 |
| Albert G. Knapp (Paralegal) | 2020: 6.5 hours at $395 | Total: $6,261.00 |

[9] The Court found several time entries for Mr. Sidlow in 2020 with uneven hourly rates and billing entries in hundredths of an hour. The Court, therefore, has simply added the value of these time entries and the number of hours billed.

| | 2021:  8.9 hours at $415 | |
|---|---|---|
| SM Robinson (Presumed Paralegal) | 2018:  0.9 hours at $310<br>2020:  5.2 hours at $320 | Total: $1,943.00 |
| KH Bracey (Presumed Paralegal) | 2020:  0.4 hours at $350 | Total: $140.00 |
| MR Matta (Presumed Paralegal) | 2020:  0.2 hours at $295 | Total: $59.00 |
| QJ Longenberger (Presumed Paralegal) | 2021:  1.3 hours at $300 | Total: $390.00 |
| **Paralegal Sub-Total** | | Sub-Total: $32,580.50 |
| **Grand Total** | | **Grand Total: $540,837.00** |

**Table 1B**

| Buchanan Ingersoll & Rooney, PC | | |
|---|---|---|
| **Timekeeper** | **Hours Worked / Hourly Rate** | **Lodestar** |
| Kelly M. Neal (Partner) | 2020:  0.5 hours at $480<br>2021:  2.8 hours at $480; 4 hours at $552.25; 0.1 hours at $300 | Total: $3,822.98 *(total billed per invoice)* |
| Erin Conroy (Senior Attorney) | 2018:  0.6 hours at $200 | Total: $120.00 |
| **Attorney Sub-Total** | | Sub-Total: $3,942.98 |
| Donna Curcio (Paralegal) | 2018:  3 hours at $300<br>2019:  1.1 hours at $300; 0.4 hours at $325<br>2020:  0.6 hours at $300; 4.4 hours at $355<br>2021:  0.3 hours at $200; 0.5 hours at $300; 3.8 hours at $355 | Total: $4,661.00 |
| Geobeth Smith (Legal Assistant) | 2018:  0.2 hours at $100; 0.1 hours at $300<br>2019:  0.2 hours at $100<br>2020:  1 hour at $130<br>2021:  2.7 hours at $130 | Total: $551.00 |
| **Paraprofessional Sub-Total** | | Sub-Total: $5,212.00 |
| **Grand Total** | | **Grand Total: $9,154.98** |

The Debtor objects to the Third-Party Defendants' Rule 54 Motion on two of the twelve *Johnson* factors as well as the partial redaction of the Third-Party Defendants' time entries. The Court will consider each of the twelve factors and the Debtor's objections in turn.[10]

First, the Court notes that the Third-Party Defendants' submitted time entries are partially redacted. The Third-Party Defendants assert this is necessary to protect attorney-client privilege while the Debtor argues that the redactions prevent the Court from accurately assessing the reasonableness of the Third-Party Defendants' fees. The redactions, however, do not affect the Court's determination of a reasonable fee award because the majority of the time entries sought to be awarded have no redaction. The limited redaction on a few time entries sought for reimbursement does not prevent the Court from determining the reasonableness of the award. Even if the fully redacted time entries did relate to time spent on the Adversary Proceeding, the Third-Party Defendants are not seeking any compensation for fully redacted time entries.[11] While the Court appreciates the Third-Party Defendants' willingness to submit un-redacted time entries for *in camera* review, the Court deems it unnecessary. The Debtor's objection on this matter is overruled.

Under the first *Johnson* factor, courts consider the time and labor expended in the litigation. The Debtor does not object to the total number of hours spent by Third-Party Defendants' counsel in this Adversary Proceeding. Although the Third-Party Defendants' counsel submitted over 800 hours of billed time, the Court finds this to be a reasonable figure considering the complexity of this matter and the extensive time between the case's beginning and end. Furthermore, the Court finds the submitted time entries provide detailed descriptions of

---

[10] The Court finds that factors six, seven, and ten are not pertinent to the present case. Additionally, as the Debtor has not objected to the Rule 54 Motion on these factors, the Court will not discuss them here.
[11] See, for example, time entries of EH Murarova on May 12, 2020 and May 26, 2020.

the tasks completed.  The Court, therefore, concludes the time and labor expended in this litigation favors reasonableness.

The second *Johnson* factor looks to the novelty and difficulty of the questions raised in the litigation.  The Debtor objects that this case was not novel or complex because it involved simple claims for breach of fiduciary duty and an accounting.  AP ECF 314.  The Court disagrees with the Debtor.  This litigation involved legal concepts that involved thorough consideration, and it brought before the Court an extensive fact record.  This complexity arises not only from the record developed, but also from its procedural entanglements and extensive briefing.  Furthermore, the Debtor argues that because the Court resolved this matter on summary judgment, the litigation cannot be described as complex.  AP ECF 314.  This argument, however, is misplaced.  The decision of a case on a motion for summary judgment bears no automatic relationship to the matter's complexity.  To rule on summary judgment merely communicates that the Court finds no genuine dispute of material fact and the prevailing party is entitled to summary judgment as a matter of law.  *See* FED. R. CIV. P. 56.  A case can often present a bitter and complicated disagreement on a matter of law with no genuine dispute of material fact.  As is often the case, extensive discovery may be necessary to determine just what facts are in genuine dispute, and it is incumbent on the party opposing summary judgment to present "specific facts showing that there is a genuine issue for trial."  *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)).  When the non-moving party fails to do so, the Court may rule as a matter of law as it did here.  The Court, therefore, finds this matter involved complex litigation and the second *Johnson* factor favors reasonableness.

Under the third *Johnson* factor, courts consider the skill required to perform the services rendered. As the Court discussed above, the case at hand involved extended and complex litigation. Third-Party Defendants' counsel required a high level of skill to properly defend their clients against the Debtor's claims, including an understanding of the financing intricacies involved under the veneer of a complex Chapter 11 case. The Court, therefore, finds the third *Johnson* factor favors reasonableness.

Under the fourth *Johnson* factor, courts look to the attorneys' opportunity costs in pressing the instant litigation. This matter began over five years ago and has consumed extensive amounts of time for all parties involved. By litigating this case, Third-Party Defendants' counsel have devoted significant resources to their clients' success. Had counsel declined to represent the Third-Party Defendants in this matter, they no doubt would have spent their time on other matters. The fourth factor, therefore, favors reasonableness.

Under the fifth *Johnson* factor, courts consider the reasonableness of the requested fee in line with the customary fee for like work. "It is the applicant's burden to 'produce satisfactory specific evidence of the prevailing market rates . . . .'" *In re Emerald Grande*, 2021 WL 4692591, at *4 (citing *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010)). An attorney's own affidavit, standing alone, is generally insufficient to provide the required evidence for the current prevailing market rate. *See Robinson*, 560 F.3d at 244–45 (finding an attorney's affidavit of his normal billing rate was insufficient without other evidence of the market rate). Furthermore, to establish the typical attorney fee rate in a particular case, courts look to the prevailing market rate in the community in which the court sits. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Rum Creek Coal*, 31 F.3d at 175. The Debtor asserts that the Third-Party Defendants have failed to provide satisfactory evidence of the market rate in this district. AP

15

ECF 314, at 6–7.  The Third-Party Defendants, however, have submitted affidavits of their own attorneys and provided recent case law showing the typical rates charged in West Virginia.[12] These submissions satisfy the Third-Party Defendants' burden.

Next, the Court will consider whether the rates charged by Third-Party Defendants' counsel are reasonable in this district.  "An hourly rate is considered reasonable when it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Johnson v. Ford Motor Co.*, No. 3:13-cv-06529, 2018 WL 1440833 (S.D. W. Va. Mar. 22, 2018) (citing *Blum*, 465 U.S. at 895 n.11).  The Third-Party Defendants seek an award for attorneys' fees as high as $775.00 per hour.  The Court, however, in consideration of the protracted years of litigation, complexity of this case, and sophistication of legal expertise required, finds the submitted rates are not unreasonable.  While not dispositive of a reasonable fee rate, Third-Party Defendants' counsel have already reduced their own rates by a significant margin in this case.  *See* AP ECF 303-2 (noting that Mr. Chronis has reduced his 2021 rate from $1,195.00 per hour to $748.00 per hour).  Furthermore, the Third-Party Defendants persuasively point the Court to an order approving attorneys' fees of $685.00 per hour in this district.  Order, In re Protea Biosciences, Inc., No. 17-bk-1200 (Bankr. N.D. W. Va. Dec. 13, 2018); *see also* AP ECF 322-1, Exhibit A.  Finally, the Court recognizes that attorneys' fees are generally not static.  The rate of $685.00 per hour approved three years ago, therefore, is closer to the highest-approved rate of $775.00 than it initially appears.  The Court, therefore, finds the attorneys' billed rates as submitted with the Rule 54 Motion are reasonable without reduction.

---

[12] Although the Third-Party Defendants initially submitted evidence of prior approved rates only from the Eastern District of Virginia, which is insufficient to demonstrate the market rate for the Northern District of West Virginia, they later pointed this Court to recent case law in this district.  *See* AP ECF 322-1, Exhibit A.

Conversely, upon the Court's analysis of the paraprofessionals' fees in this matter, the Court finds the rates charged exceed the range of reasonable hourly rates in this district. Although the rates charged by the paraprofessionals in this matter, similar to the attorneys' rates, have been significantly reduced from their usual rate, the reduced rates are still excessive in this jurisdiction.  Prior approved rates for paraprofessionals in West Virginia often range between $100.00 to $145.00 per hour.  *See, e.g.*, *Johnson*, 2018 WL 1440833, at *6.  The paraprofessional rates in this case have at times exceeded $400.00 per hour.  These rates are higher than appropriate for this district.  The work of paraprofessionals in complicated civil litigation does not substantially change whether conducted in Chicago, New York, or West Virginia.  The Court, therefore, will cap the paraprofessionals' rates at $250.00 per hour, a rate more commensurate with those in this district.[13]  Under this cap, the highest billed rate of $440.00 per hour will be reduced to $250.00 per hour and all lower billed rates will be reduced proportionally.

Finally, the Court notes that it has been unable to identify four timekeepers from Duane Morris: SM Robinson, KH Bracey, MR Matta, and QJ Longenberger.  These individuals are not identified in the Declarations of Elinor H. Murarova or Paul E. Chronis but have billed time on this case.  As the Court has been unable to locate these individuals on Duane Morris' website and notes their hourly rates are similar to those of identified paraprofessionals, the Court presumes these individuals are paraprofessionals and will reduce their rates accordingly.  The Court submits Table 2 reflecting the cap, other resulting reductions, and their effect on the billing totals of each paraprofessional:

---

[13] Even the rate of $250.00 per hour for paraprofessional work gives this Court some pause.  The Court, however, finds it to be an overall reasonable rate given the facts and circumstances of this case.

**Table 2**

| Timekeeper | Prior Rate Per Hour | Reduced Rate Per Hour | New Billing Totals |
|---|---|---|---|
| Michael D. Sidlow | 2017: $375<br>2018: $395<br>2019: $415<br>2020: $440; $375; and separate billing total of $2,596.00<br>2021: $375 | 2017: $213.07<br>2018: $224.43<br>2019: $235.80<br>2020: $250 and $213.07, respectively. Separate total of $2,596.00 reduced to $1,475.00<br>2021: $213.07 | $13,515.63 |
| Albert G. Knapp | 2020: $395<br>2021: $415 | 2020: $224.43<br>2021: $235.80 | $3,557.39 |
| SM Robinson | 2019: $310<br>2020: $320 | 2019: $176.14<br>2020: $181.82 | $1,103.98 |
| KH Bracey | 2020: $350 | 2020: $198.86 | $79.55 |
| MR Matta | 2020: $295 | 2020: $167.61 | $33.52 |
| QJ Longenberger | 2021: $300 | 2021: $170.45 | $221.59 |
| Donna Curcio | 2018: $300<br>2019: $325; $300<br>2020: $355; $300<br>2021: $355; $300 and $200 | 2018: $170.45<br>2019: $184.66 and $170.45, respectively.<br>2020: $201.70 and $170.45, respectively.<br>2021: $201.70, $170.45, and $113.64, respectively. | $2,648.29 |
| Geobeth Smith | 2018: $300; $100<br>2019: $100<br>2020: $130<br>2021: $130 | 2018: $170.45 and $56.82, respectively.<br>2019: $56.82<br>2020: $73.86<br>2021: $73.86 | $313.07 |
| **New Grand Total** | | | **$21,473.02** |
| Prior Billing Total | | | $37,792.50 |
| Difference Between Prior and New Billing Totals | | | ($16,319.48) |

The eighth *Johnson* factor considers the amount in controversy and the results obtained by the prevailing party. Here, the Debtor sought damages in an undetermined amount for

18

economic loss; loss of value to the Mall; and attorneys' fees, costs, and expenses.  AP ECF 72.

The Debtor also sought punitive damages for the Third-Party Defendants' alleged conduct.  AP

ECF 72.  While the Court does not find any specific evidence to support the Third-Party

Defendants' assertion that alleged damages were understood to exceed $10 million, *see* AP ECF

303, at 4, the Court finds the alleged damages, if proven, could have been significant.

Additionally, Third-Party Defendants' counsel achieved a positive result with the early dismissal

of five of the Debtor's seven claims, and success on summary judgment for the remaining two

claims.  *See* AP ECF 117, 281.  The eighth factor, therefore, supports a finding of

reasonableness.

      The ninth *Johnson* factor concerns the experience, reputation, and ability of the

prevailing party's counsel.  There is no question, and no objection from the Debtor, of the

significant experience and ability of Third-Party Defendants' counsel.  The Third-Party

Defendants employed the services of no less than eleven attorneys, six of whom are currently

partners at their respective firms.  Additionally, eight paraprofessionals worked on this matter.

This demonstrates a substantial breadth of experience and ability available to the Third-Party

Defendants.  Additionally, both firms retained by the Third-Party Defendants are widely

respected, national law firms known to provide quality legal services for their clients.  The Court

has no concern about Third-Party Defendants' counsel on this factor.

      The eleventh *Johnson* factor considers the nature and length of the professional

relationship between attorney and client.  As evidenced by the billing entries extending back as

far as 2016, the Third-Party Defendants' relationship with counsel has existed for at least five

years.  Furthermore, as noted in *Johnson*, "[a] lawyer in private practice may vary his fee for

similar work in the light of the professional relationship of the client with his office . . . [and t]he

Court may appropriately consider this factor in determining the amount that would be reasonable." *Johnson*, 488 F.2d at 719.  While the Court notes that Third-Party Defendants' counsel have significantly reduced their hourly billing rates here, this reduction could have served another purpose, namely, to more closely reflect the typical rates of attorneys in West Virginia under the fifth *Johnson* factor.  Nevertheless, the Court finds the eleventh *Johnson* factor is at least neutral as to reasonableness.

The twelfth *Johnson* factor concerns attorneys' fee awards in similar cases.  The Third-Party Defendants cite *Vienna Metro* as a similar case.  *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10-cv-00502, 2011 WL 13369780 (E.D. Va. Aug. 24, 2011).  In *Vienna Metro*, the court awarded the prevailing party $4,137,345.00 in attorneys' fees upon its victory in a multi-million dollar breach of contract dispute.  *Id.* at *2.  Similar to *Vienna Metro*, the Debtor here alleged a breach of contract claim, among others, against the Third-Party Defendants.  *See* AP ECF 72.  Furthermore, the Third-Party Defendants' damages could have, in theory, risen to several million dollars.  The Court, therefore, finds a requested attorneys' fee award of $549,988.23 to be reasonable under this factor as compared to other cases in this circuit.

Finally, although not one of the twelve *Johnson* factors, the Debtor has objected to the billing methods employed by Third-Party Defendants' counsel.  AP ECF 314, at 8.  Specifically, the Debtor objects that Third-Party Defendants' counsel have engaged in block billing.  AP ECF 314.  "Entries that lump multiple tasks together under a single time entry present a significant barrier to a reasonableness review."  *In re Emerald Grande*, 2021 WL 4692591, at *5 (citing *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 (E.D. Va. 2015)).  "Inadequate documentation includes the practice of grouping or 'lumping' several tasks together under a single entry, without specifying the amount of time spent on each particular task."  *Id.*

(citing *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012)).
While some courts disallow lumped time entries entirely, others have reduced block-billed time
entries by 10–20%. *Id.* at *5 n.8. "[W]here the Court can make a reasonable determination of
the tasks performed given its knowledge of the litigation and the efforts undertaken, a modest
percentage reduction is the more appropriate course." *Id.*

The Third-Party Defendants' time entries demonstrate that counsel engaged in periodic
block-billing. For example, on March 15, 2021, Mr. Chronis billed $7,672.50 for 9.9 hours of
work. In the description for this time entry, Mr. Chronis wrote "Prepare for and participate in
deposition of diminunition [sic] expert Dawson. Conference call with E. Murarova re:
preparation points for standard of care expert and review of report re: same. Emails re: expert
reports." AP ECF 303-1, at 277. In this description, Mr. Chronis detailed three separate
activities but only submitted a single time entry of 9.9 hours, a clear example of block billing.
Although the Court can fairly discern the tasks completed, it cannot determine the time spent on
each task. The Court, therefore, will reduce the Third-Party Defendants' requested fees by 10%
for all block-billed time entries exceeding 0.5 hours. *See In re Emerald Grande*, 2021 WL
4692591, at *6. By the Court's calculation, the lumped time entries total $303,604.50. The total
attorneys' fee award, therefore, will be reduced by $30,360.45.

To conclude, the Court finds each *Johnson* factor is either favorable or neutral to the
Court's reasonableness analysis. The Third-Party Defendants' requested attorneys' fees,
therefore, will not be reduced except in accordance with the paraprofessional rate cap and block-
billing deductions described above. The Court concludes that the Third-Party Defendants'
lodestar figure is $503,308.30 ($549,988.23 - $16,319.48 - $30,360.45).

21

**B.      Subtraction for Hours Spent on Unsuccessful Claims**

In the second step of the fee award process, the Court must subtract from the lodestar

figure the "fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*,

560 F.3d at 244.  The Debtor argues that fees and expenses spent on unsuccessful positions or

motions should be disallowed.  *See* AP ECF 314, at 8–9.  The Debtor's argument, however,

misses the mark.  In the Fourth Circuit, only fees related to unsuccessful claims are reduced

under the second prong.  An unsuccessful position or motion does not provide a basis to subtract

fees if the party ultimately succeeds on the claim.  *See Carpet Super Mart, Inc. v. Benchmark

Int'l Co.*, No. 1:18CV398, 2020 WL 4505670, at \*14 (M.D.N.C. Aug. 5, 2020) ("[D]istrict

courts in this circuit award fees for unsuccessful motions if the moving party was successful on

the underlying claim and the motion advanced that claim in some permissible way.").

In this matter the Third-Party Defendants argued successful defenses against each of the

Debtor's claims.  *See* AP ECF 117 (dismissing claims I–II, IV–V, and VII); AP ECF 281

(granting summary judgment in favor of the Third-Party Defendants on claims III and VI).  As

the Third-Party Defendants succeeded on each claim in the Adversary Proceeding, the Court will

not subtract any fees from the lodestar under this step.

**C.      Awarding a Percentage Based on Litigant's Success**

In the third and final step of awarding attorneys' fees, the Court should award a

percentage of the remaining fees "depending on the degree of success enjoyed by the plaintiff."

*McAfee*, 738 F.3d at 88 (citing *Robinson*, 560 F.3d at 244).  When the moving party achieves full

relief, it should receive a fully compensatory fee.  *See In re Emerald Grande*, 2021 WL 4692591,

at \*2.  Courts in the Fourth Circuit have reduced attorneys' fee awards when the fees are multiple

times greater than the resulting damage award.  *See McAfee*, 738 F.3d at 95 (reducing an

22

attorneys' fee claim for over $300,000.00 to just $100,000.00 when the plaintiff recovered only $2,943.60).

Here, the Debtor filed suit against the Third-Party Defendants on seven counts seeking both contract and punitive damages among other declaratory relief.  AP ECF 71.  The Third-Party Defendants seek, prior to any reduction, total attorneys' fees of $549,988.23.  In comparison to the relief sought by the Debtor, these fees are certainly not one hundred times greater than alleged damages.  Additionally, the Third-Party Defendants succeeded in defending against all seven of the Debtor's claims.  In contrast to *McAfee* where the fees sought were one hundred times greater than the resultant damage award, the Third-Party Defendants successfully defended a multi-million-dollar lawsuit while incurring only slightly more than $500,000.00 in attorneys' fees.  The Court, therefore, will not reduce the Third-Party Defendants' attorneys' fees under this prong.

III.    <u>Bill of Costs and Litigation Expenses</u>

The Third-Party Defendants filed multiple affidavits in connection with their litigation expenses and Bill of Costs to be taxed against the Debtor.  In adversary proceedings, Bankruptcy Rule 7054(b) waives the language of Federal Rule of Civil Procedure 54(d)(1).  *See* BANKR. R. 7054.  Under Rule 7054(b)(1), "[t]he court may allow costs to the prevailing party except when a statute . . . or these rules otherwise provides."  The Debtor made no objection to the Third-Party Defendants' costs; therefore the Court will award costs as permitted by applicable law.

The Court must first distinguish the Third-Party Defendants' litigation expenses from their Bill of Costs.  First, the Third-Party Defendants submitted two affidavits with the Rule 54 Motion, the Declarations of Elinor H. Murarova and Paul E. Chronis.  *See* AP ECF 303, 303-1, 303-2.  The Third-Party Defendants, by way of the Rule 54 Motion and attached declarations,

request their reasonable litigation expenses from the Debtor by the terms of the Loan Agreement. AP ECF 303.  Second, the Third-Party Defendants filed a Bill of Costs with an attached brief and separate declaration from Ms. Murarova.  AP ECF 307, 307-1, 307-2.  From the Bill of Costs and attached filings, the Third-Party Defendants seek to tax their costs according to 28 U.S.C. § 1920.  AP ECF 307-1.  The Third-Party Defendants note, however, that they are not seeking a double recovery for expenses appearing on both the Rule 54 Motion and Bill of Costs.  *See* AP ECF 303, at 1 n.1.  For expenses that are approved under either the Rule 54 Motion or Bill of Costs, therefore, the Court will deduct the identical expense from the opposite filing.

The Court will consider the Bill of Costs and Rule 54 Motion in turn.

### A.    Awarding Statutory Costs

Section 1920 sets forth the items which the prevailing party may tax against the losing party.  28 U.S.C. § 1920.  Before taxing costs, however, Section 1924 requires "the party claiming any item of cost or disbursement [to] attach thereto an affidavit . . . that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."  *Id.* § 1924.  Additionally, Local Rule 54.01[14] directs the prevailing party to prepare and file a Bill of Costs.  N.D. W. VA. LR CIV. P. 54.01.

The Third-Party Defendants seek to tax the following costs in the Bill of Costs:

| | |
|---|---|
| **Fees of the Clerk:** | $2,506.00 |
| **Transcript Fees:** | $13,100.93 |
| **Witness Fees:** | $120.00 |
| **Deposition Costs:** | $375.00 |

---

[14] Applicable to this proceeding through N.D.W.Va. LBR 9029-3.

"The prevailing party bears the burden of showing that the requested costs are allowable under [Section] 1920." *Ramonas v. West Virginia Univ. Hosps.-East, Inc.*, No. 3:08-CV-136, 2010 WL 3282667, at *2 (N.D. W. Va. Aug. 19, 2010) (citing *Cofield v. Crumpler*, 179 F.R.D. 510, 514 (E.D. Va. 1998)). "Once the prevailing party has carried its burden, the burden then shifts to the losing party to show any impropriety of taxing the proposed costs." *Id.* When considering a Bill of Costs, courts are generally limited to "assessing only those costs enumerated under [Section 1920]." *Id.* at *3 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987)).

The Court will now discuss each asserted statutory cost in turn.

      **1.**    **Clerk Fees**

"Fees of the clerk and marshal" may be taxed by the Court. § 1920(1). The Third-Party Defendants, however, submitted fees of $2,506.00 as reimbursement for *pro hac vice* admissions. *See* AP ECF 307-2. District courts in this circuit are split as to whether *pro hac vice* expenses are considered taxable costs under Section 1920. *See Belk, Inc. v. Meyer Corp.*, No. 3:07-CV-168-DSC, 2010 WL 3474918, at *10 (W.D.N.C. Aug. 31, 2010) (denying *pro hac vice* fees by local rule); *but see Synergistic Int'l, L.L.C. v. Korman*, No. 2:05cv49, 2007 WL 517676, at *2 (E.D. Va. Feb. 8, 2007) (finding the taxation of *pro hac vice* fees to be proper).

The Court is persuaded by the reasoning of *Romero v. United States* as followed by *Schmitz-Werke* and concludes that *pro hac vice* fees are "an expense of counsel for the privilege of practicing law in this Court." *Romero v. United States*, 865 F. Supp. 585, 594 (E.D. Mo. 1994); *see also Schmitz-Werke GMBH + Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734, 735 (D. Md. 2003) (following the holding of *Romero* and denying *pro hac vice* fees). The Court, therefore, will deny the Third-Party Defendants' fees of $2,506.00 under Section 1920.

### 2.    Transcript Fees

Next, the Court may tax "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  A court "should award costs when the taking of a deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Federal Sav. & Loan Ass'n.*, 830 F.2d 522, 528 (4th Cir. 1987).  The Third-Party Defendants submitted $13,100.93 in transcript fees in their Bill of Costs but only requested $11,938.43 in the Declaration of Elinor H. Murarova attached to the Rule 54 Motion.  *Compare* AP ECF 307 *with* AP ECF 303-2.  As the Third-Party Defendants do not explain the discrepancy between the figures listed in the Bill of Costs and the Declaration of Elinor H. Murarova, the Court will only consider the lesser figure of $11,938.43.

The Third-Party Defendants assert these transcripts were necessary to defend the case and prepare briefs for the instant litigation.  As the Debtor did not object to these expenses, the Court finds the transcripts were reasonably necessary at the time of their taking and therefore grants to the Third-Party Defendants $11,938.43 in costs against the Debtor.

### 3.    Witness Fees

Under Section 1920(3), the Court may tax witness fees against the losing party. § 1920(3).  Furthermore, Section 1821(b) provides that witnesses attending a deposition shall be paid an attendance fee of $40.00 per day for each day's attendance.  The Third-Party Defendants submitted $120.00 in witness fees in the Bill of Costs but asked for $535.00 in witness fees in the Declaration of Elinor H. Murarova.  *Compare* AP ECF 307 *with* AP ECF 303-2.  Similar to the transcript fees above, the Third-Party Defendants do not explain the discrepancy between these sums and the Court will only consider the lesser figure of $120.00.

The Third-Party Defendants list each of the witnesses for whom the fees are to be taxed: Kermit Tyree Contracting Inc., Gold Coast Partners, LLC, and Dario Campelo.  AP ECF 307. The Third-Party Defendants seek to tax the witness attendance fee of $40.00 per day for each witness.  As each witness only appeared for one day of depositions, the Third-Party Defendants are seeking only $120.00 in witness fees.  As the Debtor has not objected to these fees, the Court will grant $120.00 in witness fees to the Third-Party Defendants.

### 4.    Deposition Costs

Finally, the Third-Party Defendants seek $375.00 for deposition costs under Section 1921(a)(1)(B).  Section 1921(a)(1)(B) grants courts discretion to tax costs for United States marshals or deputy marshals to "serv[e] a subpoena or summons for a witness or appraiser." Federal regulations limit the fees for service by the United States Marshals Service to $65.00 per hour.  28 C.F.R. § 0.114(a)(3).  The Third-Party Defendants seek to tax these costs alleging they were "incident to the taking of depositions that were necessary in defending the case, specifically fees relating to the service of subpoenas upon necessary third-party witnesses."  AP ECF 307-1. As the Debtor has not objected that these fees were unnecessary or higher than permitted by regulation, the Court will grant $375.00 in deposition costs to the Third-Party Defendants.

In sum, the Court will tax $12,433.43 in costs under Sections 1920 and 1921 against the Debtor in favor of Comm 2013.


### B.    Awarding Expenses by the Loan Agreement

Next, the Third-Party Defendants rely upon the terms of the Loan Agreement to seek reimbursement for their litigation expenses outside of those costs taxable under federal law.  The Loan Agreement provides that the Debtor must pay or reimburse:

27

all *reasonable* costs and expenses (including *reasonable* attorneys' fees and expenses) incurred by Lender in connection with . . . (v) enforcing or preserving any rights in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation or otherwise, in each case against, under or affecting [Debtor], this Agreement, any other Loan Document, the Property, or any other security given for the Loan . . . .

AP ECF 1-1, Exhibit B, at 122 (emphasis added). As discussed in Section I above, the Court construes the Debtor's contractual responsibility to mean it must reimburse the Third-Party Defendants' incurred fees and expenses to Comm 2013. In the Rule 54 Motion and attached Declaration of Elinor H. Murarova, the Third-Party Defendants seek the following expenses:

| | |
|---|---|
| **Printing & Duplicating – External:** | $1,279.07 |
| **Postage:** | $58.50 |
| **Travel Away From Home:** | $517.90 |
| **Meeting Expense:** | $136.86 |
| **Professional Services:** | $54,807.00 |
| **Overnight Mail:** | $802.40 |
| **Taxi Fares:** | $128.16 |
| **Car Rental:** | $87.33 |
| **Miscellaneous:** | $21.87 |
| **Air Travel:** | $3,697.00 |
| **Printing & Duplication – Internal:** | $396.30 |
| **Color Printing & Duplicating – Internal:** | $5,457.13 |
| **Binding – Printing & Duplicating:** | $32.50 |
| **Document Retrieval:** | $282.97 |
| **Alerts:** | $396.30 |

AP ECF 303-2.[15] Similar to costs sought under Sections 1920–21, "[t]he fee applicant bears the burden of providing sufficiently detailed records to explain and support her request for costs." *Hamner v. Anne Arundel Cnty.*, No. CCB-10-2485, 2014 WL 1943586, at *6 (D. Md. May 14, 2014). Furthermore, the Court notes the parties' Loan Agreement requires litigation expenses to be reasonable. Although the Debtor did not object to any requested expenses, the Court will exercise its discretion in determining the reasonableness of the requested costs.

---

[15] These expenses are exclusive of the fees and expenses already considered in Subsection III.A above.

The Third-Party Defendants filed the Declaration of Paul E. Chronis in connection with
their Rule 54 Motion.  In this declaration, the invoices submitted by Duane Morris to the Third-
Party Defendants included entries for each individual litigation expense.  The Court notes,
therefore, the Third-Party Defendants generally did not "batch" their expenses at the end of this
litigation to drive up costs for the Debtor but rather incurred measured and consistent expenses
as deemed necessary for litigation.  The Court does, however, take issue with a few expenses that
will be discussed in turn.

First, the Third-Party Defendants submitted for reimbursement $54,807.00 in
"Professional Services" fees.  AP ECF 303-2, at 4.  Counsels' time entries fail to describe or
explain these fees beyond three time entries in their final invoice.  AP ECF 303-1, at 330.  This
large sum is vague as to the services performed and the Court cannot find any evidence to
support its reasonableness.[16]  As the Third-Party Defendants have had ample opportunity to
provide the Court with an explanation as to the nature of these "Professional Services" but have
failed to do so, the Court will disallow these expenses as not reasonable as too vague.  The
Court, therefore, denies the Third-Party Defendants' request for $54,807.00 in "Professional
Services" expenses.

Second, the Third-Party Defendants submitted for reimbursement $3,697.00 in air travel
expenses.  *See* AP ECF 303-2, at 4.  The time entries in the Declaration of Paul E. Chronis
describe the traveling individual, departure location, destination, and date of the flight.  The
Third-Party Defendants did not, however, describe the reasons why these flights were reasonable

---

[16] While one time entry describes this category of fees as "Professional Services Audio Transcript of 6-23-2021
Hearing," the Third-Party Defendants fail to explain why this expense is included in "Professional Services" rather
than the transcript expenses previously awarded by the Court.

and necessary for this litigation.  The Court, therefore, will deny the Third-Party Defendants'
request for $3,697.00 in air travel expenses.

The Court, however, has reviewed the remaining expenses and finds them reasonable in
light of the lengthy and complex litigation in this case.  Without any objections from the Debtor
as to these expenses, the Court will grant the Third-Party Defendants' remaining litigation
expenses in the total amount of $9,597.29.


## Conclusion

For all of the above stated reasons, the Rule 54 Motion is granted with the modifications
described above.  The Court awards a total of $503,308.30 in attorneys' fees and $9,597.29 in
litigation expenses to Comm 2013.  The Court also taxes costs against the Debtor in favor of
Comm 2013 in the amount of $12,433.43.   A separate Order will follow.